# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Minnesota Voters Alliance, Ronald Moey, Marissa Skaja, Charles R. Halverson, Blair L. Johnson,

              Plaintiffs,

vs.

City of Minneapolis,

              Defendants.

Case No.  20-CV-02049 MJD/TNL

**Amended Complaint for Declaratory and Injunctive Relief**

**Jury Trial Demanded**

---

The Plaintiffs make the following allegations for their complaint.

## Introduction

Minnesota Voters Alliance and its member-plaintiffs bring this lawsuit against the City of Minneapolis because of its acceptance of private moneys through a conditional grant from a non-profit corporation used to conduct federal elections.  Minneapolis accepted a conditional grant totaling $3 million from the Center for Tech and Civic Life (CTCL).  It is the contention of the Plaintiffs that the use of conditional grants of private moneys is violative of the U.S. Constitution, namely the Elections Clause under Article 1, § 4, cl. 1, the First, Ninth, and Fourteenth Amendments as the local government pursuit of private conditional moneys to conduct federal elections undermines the integrity of the election process as a social contract to maintain their democratic form of government.

**Jurisdiction and Venue**

1.      Plaintiffs invoke this Court's jurisdiction under 28 U.S.C. 1331 and 1343 for constitutional claims under the Elections Clause, U.S. Const. art. I, § 4, cl. 1, the First, Ninth, and Fourth Amendments.

2.      Plaintiffs have causes of action regarding their constitutional rights and under federal common law through 42 U.S.C. § 1983.

3.      Venue is proper in this Court under 28 U.S.C. § 1391 because the Defendant City is a Minnesota municipality, with offices within Minnesota, and because the events or omissions giving rise to the claims presented occurred within Minnesota.

**Parties**

4.      Minnesota Voter Alliance is a Minnesota non-profit corporation.  The Minnesota Voter Alliance is an organization with members who seek to ensure, as part of their association objectives, public confidence in the integrity of Minnesota's elections, in election results and election systems, processes, procedures, and enforcement, and that public officials act in accordance with the law in exercising their obligations to the people of the State of Minnesota.  The Minnesota Voter Alliance also works to protect the rights of its members whenever laws, statutes, rules, regulations, or government actions that threaten or impede implied or expressed rights or privileges afforded to them under our constitutions or laws or both. Its membership includes candidates seeking elective offices.  The Minnesota Voter Alliance has many members including the individual plaintiffs.

5.      Plaintiff Ronald Moey is an eligible Minnesota voter residing in the City of Minneapolis. He resides in the 5th Congressional District.

6.     Plaintiff Marissa Skaja is an eligible Minnesota voter residing in the City of Minneapolis.  She resides in the 5th Congressional District.

7.     Plaintiff Charles R. Halverson is an eligible Minnesota voter residing in the City of Minneapolis.  He resides in the 5th Congressional District.

8.     Plaintiff Blair L. Johnson is an eligible Minnesota voter residing in the City of Minneapolis. The voter resides in the 5th Congressional District.

9.     Defendant City of Minneapolis is a Minnesota local government located in the 5th Congressional District.

## Statement of Facts

10.     The City of Minneapolis was incorporated in 1867 and its existing charter preserved under Minnesota Statutes § 410.03.

11.     The City of Minneapolis is responsible for the conduct of the November 3, 2020 elections, inclusive of federal elections.

12.     The CTCL is a private non-profit organization providing federal election grants to local governments, headquartered in Chicago, Illinois.

13.     CTCL has been funded by private donations of approximately $350 million that are in turn used as conditional private grants to local governments.

14.      CTCL has funded Minnesota local governments with conditional private grants that were and are used to conduct federal elections.

15.     In Minnesota, the CTCL has distributed $3 million of private federal election grants to the City of Minneapolis that has not been approved by Congress nor by the Minnesota state legislature.

16.     The CTCL granted $3 million to the City of Minneapolis.

17.     Each city receiving CTCL grants, according to its policy and custom, agreed to the conditions of the grant in exchange of receiving CTCL moneys.

18.     The grants are contracts between each respective city and CTCL.

19.     The conditional grants to each city require reporting back to the private non-profit corporation, CTCL, regarding the moneys used to conduct federal elections.

20.     The conditional grants to each city, under claw-back provisions, require the city to return moneys to the private non-profit corporation, CTCL, if the private non-profit corporation disagrees how those moneys were spent in the conduct of federal elections.

## COUNT I

### Violations of the First and Ninth Amendments, the Elections Clause and related federal common law

21.     Plaintiffs re-allege each previous paragraph as if fully restated in support of the instant claim.

22.     References under this count to "government" includes city, county, state, or federal, depending upon the structure of the allegation or otherwise specifically stated.

23.     The First Amendment of the U.S. Constitution protects the fundamental right to vote.

24.     The Ninth Amendment to the U.S. Constitution delegates reserved powers to the people not otherwise delegated to the United States by the Constitution.

25.     The reserved powers to the people under the Ninth Amendment are those that can be articulated as those of the people as representative of the sovereign.

26.     The right to vote is a fundamental right under the U.S. Constitution.

27.     The right to vote is individual and personal in nature.

28.     The election process is an integral part of the democratic system of the United States.

29.     The right to vote is intertwined with the right to participate in an election process, including casting a ballot for a Congressional or presidential candidate.

30.     The right to vote includes the right to participate in an electoral process that is structured to maintain the integrity of a democratic system of government.

31.     The right to vote as intertwining with the right to participate in an election process, if the voter is eligible and the ballot cast is valid, is a right under the Ninth Amendment as reserved to the people.

32.     A core governmental responsibility is the conduct of elections.

33.     A core governmental public responsibility is to conduct elections in a manner which ensures maintenance of the integrity of a democratic system of government.

34.     Electoral integrity allows peaceful resolution of conflict through the election of candidates representing differing political or philosophical beliefs, the outcome of which results in a candidate receiving the majority of votes to hold the elected office sought.

35.     Electoral integrity includes the professionalism, impartiality, and transparency of government institutions and election officials who conduct elections throughout the election cycle.

36.     Without electoral integrity, the consequences undermine the public confidence of the outcome that represents the desired change or continuation of the political policies or institutional statuses by the electorate.

37.     Integrity of an election process includes trust in the outcome of an election contest.

38.     Trust of an election outcome allows voters to be convinced electoral changes are real and deserving of their confidence.

39.     Integrity of an election process includes a fair election.

40.     Integrity of an election process includes an unbiased election.

41.     The integrity of an election process is a compelling governmental interest.

42.     The government has a compelling interest in honest elections.

43.     The government has a compelling interest in fair elections.

44.     The government has a compelling interest in unbiased elections.

45.     A voter who casts a ballot entrusts the government that the ballot will be counted, unless the ballot is invalid or voter is ineligible.

46.     The government in turn, as part of its core election responsibility, will count the ballots and attribute the count to the candidate for which the voter had cast her ballot.

47.     The government, as part of its core election responsibility, will announce the total votes of each candidate and the one candidate with the greatest number of ballots cast, as the winner of that election contest.

48.     The voters in turn, will accept the outcome of the election contest as the government has announced.

49.     The voter and government agreement regarding an election and its process is a "contract" to maintain the democratic system of government as embodied in the U.S. Constitution.

50.     The voter and government agreement regarding an election and its process is a "social contract" to maintain the democratic system of government as embodied in the U.S. Constitution.

51.     Voters have a right to the governmental maintenance of a democratic system of government under the Ninth Amendment's reservation of rights to the people.

52.     Voters have a right to the maintenance of a democratic system of government through the election process.

53.      Voters have a right to the maintenance of a democratic system of government through the election process under the Ninth Amendment's rights reserved to the people.

54.     The Elections Clause of the U.S. Constitution is found under Article 1, sec. 4.

55.     The Elections Clause establishes federal control over state-run federal Congressional and presidential elections.

56.     Conducting elections is a core governmental public function.

57.     The Elections Clause reflects the need to ensure that state or local governments do not interfere with Congressional elections.

58.     In the Federalist Papers, No. 59, Alexander Hamilton wrote that if the states were allowed to regulate the elections of Congress, then the legislators of a few important states could enter into a conspiracy to prevent an election and then this could result in the Union's destruction.

59.     The Elections Clause reflects the rights and obligations of the United States in the conduct of federal elections.

60.     One of the obligations of the United States, through the Elections Clause, is to protect a person's fundamental right to vote as protected under the First Amendment, to cast a ballot in federal elections.

61.     One of the obligations of the United States through a person's fundamental right to vote, through the Elections Clause, is to ensure the integrity of federal elections as fair and unbiased.

62.     Having fair, honest, and unbiased federal elections is a compelling interest of the United States.

63.     Having fair, honest, and unbiased federal elections is a compelling interest of the people of the United States.

64.     A voter entrusts the United States to ensure state and local governments conduct fair, honest, and unbiased federal elections through the authority granted to it under the Elections Clause.

65.     A voter entrusts the United States will ensure state and local governments will total all ballots in a federal election contest and ensure the candidate with the greatest amount of total ballots will be announced as the winner of that federal election contest as is the obligation of the United States through the Elections Clause.

66.     It is the right and obligation of the United States Congress that it will seat in the U.S. House of Representatives or the U.S. Senate, only those candidates who have won

the federal election contest in the district of the state in which the election contest was held as required under Article I, section 5 of the U.S. Constitution.

67.     The voters in turn, agree to accept the government's announcement of the winner of a federal election contest to maintain the integrity of the democratic system of the United States.

68.     The agreement between the United States and the rights and obligations embodied within reservation of rights under the Ninth Amendment and the Elections Clause as related to the conduct of federal elections over state and local governments and the voters in their acceptance of the outcome of federal election contests is a "social contract."

69.     The agreement between the United States and the rights and obligations embodied within the Ninth Amendment regarding rights reserved to the people as related to the conduct of federal elections over state and local governments and the voters in their acceptance of the outcome of federal election contests is a "social contract."

70.     The "social contract" also arises from the protection of the fundamental right to vote and integrity of an election contest as fair, honest, and unbiased to maintain the structure of the democratic process.

71.     CTCL is a private corporate non-profit entity.

72.     CTCL provided private moneys through grants to local governmental entities to conduct federal elections.

73.     The CTCL grants provided conditions governing the use of those private moneys.

74.     The local governmental entities accepted the conditions and agreed to adhere to the conditions of the private non-profit entity CTCL.

75.     The City of Minneapolis accepted $3 million in private grant moneys from CTCL.

76.     The local governmental entity, according to their policies and customs, agreed to expend the private moneys exclusively for the purpose as described in the conditions in the conduct of federal elections.

77.     The conditions, as adopted by each local governmental entity, are additional regulations in the conduct of federal elections.

78.     The local governmental entity further agreed not only to adhere to the conditions but to report back to the private entity CTCL.

79.     The CTCL grant, with conditions, is a contract.

80.     The local governmental entity used the private moneys to conduct federal elections.

81.     If the private moneys were not used to the satisfaction of the private entity CTCL, the government is to return those moneys.

82.     Hence, the governmental entity had to conduct the federal elections, at least in part, in a manner that satisfied the private entity, and not the United States.

83.     The private entity is overseeing the conduct of federal elections in contradiction of the Elections Clause and the rights reserved to the people under the Ninth Amendment.

84.     The private contract between CTCL and the local government interfered with the social contract of the Elections Clause governing the compelling interest of the United States with the voter regarding the integrity of federal elections and the voter intertwined with the voter's fundamental right to vote.

85.     The private contract between CTCL and the local government interfered with the social contract of the rights preserved to the people under the Ninth Amendment governing the compelling interest of the United States with the voter regarding the integrity of federal elections and the voter intertwined with the voter's fundamental right to vote.

86.     Plaintiff Ronald Moey is an eligible Minnesota voter residing in the City of Minneapolis. He resides in the 5th Congressional District.

87.     Plaintiff Marissa Skaja is an eligible Minnesota voter residing in the City of Minneapolis. She resides in the 5th Congressional District.

88.     Plaintiff Charles R. Halverson is an eligible Minnesota voter residing in the City of Minneapolis. He resides in the 5th Congressional District.

89.     Plaintiff Blair L. Johnson is an eligible Minnesota voter residing in the City of Minneapolis. The voter resides in the 5thCongressional District.

90.     Defendant City of Minneapolis is a Minnesota local government located in the 5th Congressional District.

91.     The City of Minneapolis accepted a CTCL grant to conduct the federal election in their respective congressional district.

92.     When local governments and their officials accept private moneys to conduct federal elections, the government interferes with the integrity of a core governmental public

function embodied within the federal election process, the Elections Clause, the Ninth Amendment, and related federal common law.

93.     When the local government accepts conditional grants for moneys to conduct federal elections, it undermines the rights and obligations the voter is entitled to rely upon from the United States that implicates the integrity of the election.

94.     Plaintiffs Ronald Moey, Marissa Skaja, Charles R. Halverson, and Blair L. Johnson know of the CTCL private monetary grants and conditions imposed upon their respective local government.  Each believe the acceptance of private moneys to conduct federal elections interferes with the social contract of the Elections Clause to ensure fair, honest, and unbiased elections and their acceptance of the election outcome.

95.     Plaintiffs Ronald Moey, Marissa Skaja, Charles R. Halverson, and Blair L. Johnson also believe that the acceptance of private moneys to conduct federal elections interferes with the social contract derived from the Ninth Amendment to ensure fair, honest, and unbiased elections and her acceptance of the election outcome.

96.     Plaintiff Minnesota Voter Alliance members know of the CTCL private monetary grant and its conditions imposed upon their respective local government.  Each member believes the acceptance of private moneys to conduct federal elections interferes with the social contract of the Elections Clause to ensure fair, honest, and unbiased elections and their acceptance of the election outcome.

97.     Plaintiff Minnesota Voter Alliance members also believe that the acceptance of private moneys to conduct federal elections interferes with the social contract derived

from the Ninth Amendment to ensure fair, honest, and unbiased elections and her acceptance of the election outcome.

98.     Hence, the Plaintiff voters also have a constitutional right not to be deliberately placed in a governmentally controlled election process in which the acceptance of private grant moneys to conduct federal elections is a design that interferes with the social contract to maintain a democratic system of government as envisioned under the Plaintiffs rights under the First and Ninth Amendments.

99.     When an election outcome is at issue due to the conduct of the federal election, ultimately, is it each respective house of Congress that decides who shall be seated as an elected representative for that Congressional district under Article I, section 5 of the U.S. Constitution.

100.    If a congressional house rejects the elected representative and refuses to seat the representative, then each of the individual Plaintiff's vote did not count, regardless of who she voted for because the rejection invalidated the federal election process.

101.    Likewise, if a congressional house rejects the elected representative and refuses to seat the representative, then each vote of each member of the Minnesota Voter Alliance residing in the affected Congressional districts vote did not count, regardless of who she voted for because the rejection invalidated the federal election process

102.    The congressional invalidation of an elected representative and refusal to seat that representative invalidates all previously cast ballots within that congressional district.

103.    As a result of the alleged facts, the voter is then disadvantaged as the voter has suffered an injury or will suffer an injury from the local governmental entity that accepted

private grant moneys to conduct federal elections, over those local governmental entities who did not.

104.    Hence, the voters also have a constitutional right not to be deliberately placed in a governmentally controlled election process in which the acceptance of conditional private grant moneys to conduct federal elections can result in the elected representative being denied by Congressional action to deny that representative a seat in Congress.

105.    The voters are disenfranchised by not having  a Congressional representative until a special election if either house of Congress calls a special election—as occurred in North Carolina's Ninth Congressional District after the November 2018 election.

106.    The City's actions accepting private moneys to pay for federal elections tortiously interferes with the social contract per the federal common law.

107.    Each Plaintiff, requests this Court to declare under 28 U.S. C. § 2201, that the local governments acceptance of private funds through conditional grants is unconstitutional under the Elections Clause, the First and Ninth Amendments of the U.S. Constitution and related federal common law.

108.    This Court should grant any other relief it deems proper, necessary, or just under the circumstances of this case.

## Count II

## Violation of the Equal Protection Clause

109.    Plaintiffs re-allege each previous paragraph as if fully restated in support of the instant claim.

110.    References under this count to "government" are inclusive of city, county, state, or federal, dependent upon the structure of the allegation or otherwise specifically stated.

111.    The Fourteenth Amendment to the U.S. Constitution protects the rights of individuals to equal protection.

112.    The Ninth Amendment to the U.S. Constitution delegates reserved powers to the people not otherwise delegated to the United States by the Constitution.

113.    The right to vote is a fundamental right under the U.S. Constitution.

114.    The right to vote is individual and personal in nature.

115.    The election process is an integral part of the democratic system of the United States.

116.    The right to vote is intertwined with the right to participate in an election process, including casting a ballot for a Congressional or presidential candidate.

117.    The right to vote includes the right to participate in an electoral process that is structured to maintain the integrity of a democratic system of government.

118.    The right to vote as intertwining with the right to participate in an election process, if the voter is eligible and the ballot cast is valid, is a right under the Ninth Amendment as reserved to the people.

119.    A core governmental responsibility is the conduct of elections.

120.    A core governmental public responsibility is to conduct elections in a manner which ensures maintenance of the integrity of a democratic system of government.

121.    Electoral integrity allows peaceful resolution of conflict through the election of candidates representing differing political or philosophical beliefs, the outcome of which results in a candidate receiving the majority of votes to hold the elected office sought.

122.    Electoral integrity includes the professionalism, impartiality, and transparency of government institutions and election officials who conduct elections throughout the election cycle.

123.    Without electoral integrity, the consequences undermine the public confidence of the outcome that represents the desired change or continuation of the political policies or institutional statuses by the electorate.

124.    Integrity of an election process includes trust in the outcome of an election contest.

125.    Trust of an election outcome allows voters to be convinced that electoral changes are real and deserving of their confidence.

126.    Integrity of an election process includes a fair election.

127.    Integrity of an election process includes an unbiased election.

128.    The integrity of an election process is a compelling governmental interest.

129.    The government has a compelling interest in honest elections.

130.    The government has a compelling interest in fair elections.

131.    The government has a compelling interest in unbiased elections.

132.    A voter who casts a ballot entrusts the government that the ballot will be counted, unless the ballot is invalid or voter is ineligible.

133.    The government in turn, as part of its core election responsibility, will count the ballots and attribute the count to the candidate for which the voter had cast her ballot in support of.

134.    The government, as part of its core election responsibility, will announce the total votes of each candidate and the one candidate with the greatest number of ballots cast, as the winner of that election contest.

135.    The voters in turn, will accept the outcome of the election contest as the government has announced.

136.    The voter and government agreement regarding an election and its process is a "social contract" to maintain the democratic system of government as embodied in the U.S. Constitution.

137.    Voters have a right to the governmental maintenance of a democratic system of government under the Ninth Amendment.

138.    Voters have a right to the maintenance of a democratic system of government through the election process.

139.    The Elections Clause of the U.S. Constitution is found under Article 1, § 4.

140.    The Elections Clause establishes federal control over state-run federal Congressional and presidential elections.

141.    Conducting elections is a core governmental public function.

142.    The Elections Clause reflects the need to ensure that state or local governments do not interfere with Congressional and presidential elections.

143.    In the Federalist Papers, No. 59, Alexander Hamilton wrote that if the states were allowed to regulate the elections of Congress, then the legislators of a few important states could enter into a conspiracy to prevent an election and then this could result in the Union's destruction.

144.    The Elections Clause reflects the rights and obligations of the United States in the conduct of federal elections.

145.    One of the obligations of the United States, through the Elections Clause, is to protect a voter's fundamental right to cast a ballot in federal elections.

146.    One of the obligations of the United States, through the Elections Clause, is to ensure the integrity of federal elections as fair and unbiased.

147.    Having fair, honest, and unbiased federal elections is a compelling interest of the United States.

148.    A voter entrusts the United States to ensure state and local governments conduct fair and unbiased federal elections through the authority granted to it under the Elections Clause.

149.    A voter entrusts the United States will ensure state and local governments will total all ballots in a federal election contest and ensure the candidate with the greatest amount of total ballots will be announced as the winner of that federal election contest as is the obligation of the United States through the Elections Clause.

150.    It is the right and obligation of the United States Congress that it will seat in the U.S. House of Representatives or the U.S. Senate, only those candidates who have won

the federal election contest in the district of the state in which the election contest was held as found under Article I, section 5 of the U.S. Constitution.

151.    The voters in turn, agree to accept the government's announcement of the winner of a federal election contest to maintain the integrity of the democratic system of the United States.

152.    The agreement between the United States and the rights and obligations embodied within the Elections Clause as related to the conduct of federal elections over state and local governments and the voters in their acceptance of the outcome of federal election contests is a "social contract."

153.    The agreement between the United States and the rights and obligations embodied within the Ninth Amendment regarding rights preserved to the people as related to the conduct of federal elections over state and local governments and the voters in their acceptance of the outcome of federal election contests is a "social contract."

154.    The "social contract" also arises from the protection of the fundamental right to vote and integrity of an election contest as fair, honest, and unbiased to maintain the structure of the democratic process.

155.    CTCL is a private corporate non-profit entity.

156.    CTCL provided private moneys through grants to local governmental entities to conduct federal elections.

157.    The CTCL grants provided conditions governing the use of those private moneys.

158.     The local governmental entity accepted the conditions as a policy and agree to adhere to the conditions.

159.     The City of Minneapolis accepted $3 million in private grant moneys from CTCL.

160.     The local governmental entity, according to its policies and customs, agreed to expend the private moneys exclusively for the purpose as described in the conditions in the conduct of federal elections.

161.     The conditions, as adopted by each local governmental entity, is an additional regulation in the conduct of federal elections.

162.     The local governmental entity further agreed not only to adhere to the conditions but to report back to the private entity CTCL.

163.     The CTCL grant, with conditions, is a contract.

164.     The local governmental entity used the private moneys to conduct federal elections.

165.     If the private moneys were not used to the satisfaction of the private entity CTCL, the government is to return those moneys.

166.     Hence, the governmental entity had to conduct the federal elections, at least in part, in a manner that satisfied the private entity, and not the United States.

167.     Thus, the private entity is overseeing the conduct of federal elections in contradiction of the Elections Clause and the rights preserved to the people under the Ninth Amendment.

168.   The private contract between CTCL and the local government interfered with the social contract of the Elections Clause governing the compelling interest of the United States with the voter regarding the integrity of federal elections and the voter intertwined with the voter's fundamental right to vote.

169.   The private contract between CTCL and the local government interfered with the social contract of the rights preserved to the people under the Ninth Amendment governing the compelling interest of the United States with the voter regarding the integrity of federal elections and the voter intertwined with the voter's fundamental right to vote.

170.   Other local governmental entities in Minnesota did not use private moneys to conduct federal elections.

171.   Plaintiff Ronald Moey is an eligible Minnesota voter residing in the City of Minneapolis. He resides in the 5th Congressional District.

172.   Plaintiff Marissa Skaja is an eligible Minnesota voter residing in the City of Minneapolis.  She resides in the 5th Congressional District.

173.   Plaintiff Charles R. Halverson is an eligible Minnesota voter residing in the City of Minneapolis.  He resides in the 5th Congressional District.

174.   Plaintiff Blair L. Johnson is an eligible Minnesota voter residing in the City of Minneapolis. The voter resides in the 5thCongressional District.

175.   Defendant City of Minneapolis is a Minnesota local government located in the 5th Congressional District.

176.   The City of Minneapolis accepted a CTCL grant to conduct the federal election in their respective congressional district.

177.    When local governments and their officials accept private moneys to conduct federal elections, the government interferes with the integrity of a core governmental public function embodied within the federal election process, the Elections Clause, the Ninth Amendment and related federal common law.

178.    When the local government accepts conditional grants for moneys to conduct federal elections, it undermines the rights and obligations the voter is entitled to rely upon from the United States that implicates the integrity of the election.

179.    Plaintiffs Ronald Moey, Marissa Skaja, Charles R. Halverson, and Blair L. Johnson know of the CTCL private monetary grants and conditions imposed upon their respective local government.  Each believe the acceptance of private moneys to conduct federal elections interferes with the social contract of the Elections Clause to ensure fair, honest, and unbiased elections and their acceptance of the election outcome.

180.    Plaintiffs Ronald Moey, Marissa Skaja, Charles R. Halverson, and Blair L. Johnson also believe that the acceptance of private moneys to conduct federal elections interferes with the social contract derived from the Ninth Amendment to ensure fair, honest, and unbiased elections and her acceptance of the election outcome.

181.    The City knew of the CTCL private monetary grant and its conditions imposed upon their respective local governments.

182.    The City's acceptance of private moneys to conduct federal elections interferes with the social contract of the Elections Clause to ensure fair, honest, and unbiased elections and their acceptance of the election outcome.

183.    The City's acceptance of private moneys to conduct federal elections interferes with the social contract derived from the Ninth Amendment to ensure fair, honest, and unbiased elections and the Plaintiffs acceptance of the election outcome.

184.    When an election outcome is at issue due to the conduct of the federal election, ultimately, is it each respective house of Congress that decides who shall be seated as an elected representative for that Congressional district under Article I, § 5 of the U.S. Constitution.

185.    If a congressional house rejects the elected representative and refuses to seat the representative, then each Plaintiff's vote did not count, regardless of whom she or he voted for because the rejection invalidated the federal election process.

186.    The congressional invalidation of an elected representative and refusal to seat that representative invalids all previously cast ballots within that congressional district.

187.    As a result of the alleged facts, the voter is then disadvantaged as the voter has suffered an injury or will suffer an injury from the local governmental entity who accepted private grant moneys to conduct federal elections, over those local governmental entities who did not.

188.    Hence, the voters also have a constitutional right not to be deliberately placed in a governmentally controlled election process in which the acceptance of conditional private grant moneys to conduct federal elections can result in the elected representative being denied by Congressional action to deny that representative a seat in Congress.

189.    The voters are disenfranchised by not having a Congressional representative until a special election if either house of Congress calls a special election—as occurred in North Carolina's Ninth Congressional District after the November 2018 election.

190.    In any Congressional district that did not accept private CTCL funding to conduct federal elections, the federal election process is upheld with the acceptance of the elected representative as having a seat in Congress.

191.    Therefore, each Plaintiff is treated differently when either house rejects the elected representative and hence, invalidates the federal election process, and accepts the representative from the congressional district in which the governmental entity did not accept private monetary conditional grants.

192.    The Plaintiffs requests this Court to declare under 28 U.S.C. 2201, that the local government's acceptance of private funds through conditional grants is unconstitutional as violative of the Equal Protection Clause of the U.S. Constitution.

193.    This Court should grant any other relief it deems proper, necessary, or just under the circumstance of this case.

## Demand for Jury Trial

194.    Plaintiffs demand a jury trial.

## Prayer for Relief

Therefore, the Plaintiffs respectfully ask that this Court to:

1.    Grant declaratory relief and declare that the City of Minneapolis' acceptance of private funds through federal election conditional grants is unconstitutional under the Elections Clause, the First and Ninth Amendments of the U.S. Constitution and related federal common law.

2.    Grant declaratory relief and declare that the City of Minneapolis' acceptance of private funds through federal election conditional grants is unconstitutional as a violation of the Equal Protection Clause of the U.S. Constitution.

3.    Issue an injunction enjoining the City of Minneapolis from accepting or using the CTCL's private federal election grants in the future

4.    Issue an injunction enjoining the City of Minneapolis from accepting or using any private federal election grants in the future.

5.    Award the Plaintiffs all costs, expenses, and expert witness fees allowed by law;

6.    Award the Plaintiffs attorneys' fees and costs allowed by law; and

7.    Award the Plaintiffs such other and further relief as this Court deems just.

Dated:  November 13, 2020

_Electronically Signed by Erick G. Kaardal_
Erick G. Kaardal, No. 1035141
Special Counsel to Amistad Project
of the Thomas More Society
Gregory M. Erickson, 1050298
William F. Mohrman, 168816
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email:  kaardal@mklaw.com
_Attorneys for Plaintiffs_